UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHS, INC. | * | CIVIL ACTION |
| | * | |
| | * | NO. 11-2391 |
| | * | |
| PLAQUEMINES HOLDINGS, LLC | * | SECTION "L"(2) |

## ORDER & REASONS

Before the Court is defendant Plaquemines Holdings, LLC's ("Plaquemines Holdings" or "Plaquemines") Motion to Dismiss Pursuant to Rule 4(m). (R. Doc. 6). For the following reasons, this Motion is DENIED.

**I.     BACKGROUND**

The present matter arises out of the sale and purchase of a litigious right and the attempt to redeem this right. Plaintiff CHS, Inc. is a corporation organized and existing under the laws of the state of Minnesota, with its principal place of business in Minnesota. CHS has filed to do business in the Louisiana with the Louisiana Secretary of State as "CHS Inc. of Minnesota." Non-party, CHS-SLE Land, LLC is a Louisiana limited liability company, whose two members are CHS and non-party, South Louisiana Ethanol, LLC ("SLE").

Defendant Plaquemines Holdings is a limited liability company organized and existing under the laws of the state of Louisiana. The sole member of Plaquemines is non-party J.A.H. Enterprises, Inc., a corporation organized and existing under the laws of the state of Louisiana, and with its principal place of business in Louisiana.

On August 29, 2009, SLE filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, in a proceeding captioned *In re South Louisiana Ethanol*, Case No.

09-12676, pending in the United States Bankruptcy Court for the Eastern District of Louisiana.

On April 19, 2011, the Bankruptcy Court confirmed SLE's Amended Plan of Reorganization by Liquidation Including Immaterial Modifications Under Chapter 11 of the Bankruptcy Code of South Louisiana Ethanol, LLC (the "Plan"). As of April 20, 2011, SLE was operating as a reorganized donor. Pursuant to the terms of the Plan:

> All of the assets of the Debtor, less and except its fifty (50%) percent interest in CHS-SLE Land, LLC shall be sold...With regard to the Debtor's fifty (50%) percent membership interest of 4.5 acres (batture land), if no consensual agreement can be confected with CHS, Inc., relative to the transfer of Debtor's membership interest, Debtor shall institute legal proceedings to dissolve the limited liability company and partition the real property asset of CHS-SLE Land, LLC to be divided in kind. This litigation may or may not be successful. If successful, the rights, interest, and entitlements awarded to the Debtor will be transferred to the Purchaser of the Property and option, upon the timely exercise of the option. If the litigation is not successful, it is Debtor's intention to either assign its economic attributes and retain its membership in CHS-SLE Land, LLC or SLE will remain in existence until it is able to liquidate this asset, subject to the consent and approval of security interest holder, Whitney National Bank.

On May 31, 2011, pursuant to the terms of the Plan, SLE filed a lawsuit in the 25th Judicial District Court for the Parish of Plaquemines. In this litigation, SLE sued to dissolve the LLC and to distribute all of its property to its members, CHS and SLE, on the grounds that the business purpose of the LLC has been frustrated and that there is a deadlock between the members. On June 20, 2011, CHS timely removed the case to the United States District Court for the Eastern District of Louisiana. On June 21, 2011, CHS timely filed an answer denying these and other allegations. On July 19, 2011, the case was referred to the United States Bankruptcy Court for the Eastern District of Louisiana.

Meanwhile, on June 7, 2011, the Bankruptcy Court approved an order authorizing SLE to sell, by public auction, certain assets (the "Sale Order"). Pursuant to the terms of the Sale Order, SLE was authorized to sell, by public auction, the following: (1) immovable property located in

Plaquemines Parish and commonly known as Tract A-1C1; (2) all movable property located on Tract A-1C; and (3) "an option to purchase all rights, title and interest distributed to Seller, SLE, resulting from the dissolution of limited liability company [CHS-SLE Land, LLC] (collectively "Sale Items"). On or about June 9, 2011, J.A.H. submitted a bid of $6,802,000, which was accepted by SLE for the Sale Items. On July 31, 2011, pursuant to the terms of the Sale Order, the Bankruptcy Court issued an order approving the sale (the "Approval Order") of all of the Sale Items to J.A.H. in the amount of $6,802,000. Pursuant to the terms of the Approval Order, J.A.H. agreed to pay $202,000.00 for the "option to purchase all rights, title and interest distributed to Seller, SLE, resulting from a dissolution of limited liability company [CHS-SLE Land, LLC]." The Approval Order provided that J.A.H. and SLE would close on the sale of the Sale Items at a later date. J.A.H. eventually assigned its rights under the Sale Order and the Approval Order to Plaquemines Holdings. On or about August 23, 2011, Plaquemines Holdings and SLE closed on the sale (the "Sale"), and Plaquemines Holdings became the owner of the Sale Items.

On the Sale Date, and as part of the transactions contemplated by the Sale Order and Approval Order, SLE and Plaquemines Holdings also executed an Option Agreement (the "Option Agreement"). The Option Agreement provided, in Paragraph 1(a), that in consideration of $202,000, SLE granted to Plaquemines Holdings an exclusive option to acquire from SLE all of its "right, title and interest in and to all distributions (the 'Property') made to [SLE] in the liquidation of [CHS-SLE Land, LLC] resulting from the Judgment." The Option Agreement further provides that "the acquisition price for the Property shall be One Dollar cash, plus the option price paid to [SLE] pursuant to the terms of Paragraph 1(a)."

-3-

On September 9, 2011, Whitney National Bank filed a motion in the Bankruptcy Court seeking an order to distribute certain proceeds of the Sale. This motion is the first time that CHS learned that the Sale had closed. It is also the first time that CHS learned that Plaquemines Holding was the entity that actually purchased the Sale Items.

On September 22, 2011, CHS filed a Complaint for Redemption in this Court against Plaquemines Holdings. (R. Doc. 1). CHS cites as a basis for the litigation, Article 2652 of the Louisiana Civil Code, Sale of a Litigation Right, which provides that "[w]hen a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of the assignment." It further provides that a "right is litigious, for that purpose, when it is contested in a suit already filed." CHS alleges that the litigation was commenced on May 31, 2011, and CHS answered, denying the allegations in the litigation on June 21, 2011, and Plaquemines Holdings, in effect, purchased the claims that are the subject of the litigation on August 23, 2011. According to CHS, this sequences demonstrates the purchase of a litigious right by Plaquemines Holdings from SLE. CHS, thus, makes a redemption demand upon Plaquemines Holdings for $202,000, together with interest at the judicial rate, commencing on the Sale Date. CHS prays for the following relief from the Court: (1) declare that Plaquemines Holdings purchased the claims that are the subject of the litigation pursuant to Louisiana Civil Code Article 2652 when it entered into the Option Agreement; (2) declare that CHS is entitled to redeem the property purchased by Plaquemines Holdings in the Option Agreement; (3) order Plaquemines Holdings sell the property it purchased in the Option Agreement to CHS for $202,000; and (4) grant CHS further relief as the Court deems just, proper and equitable.

## II. PENDING MOTIONS

### A. Plaquemines Holdings' Motion

Plaquemines Holdings filed the present Motion pursuant to Federal Rule of Civil Procedure 4(m), arguing that because the summons was not issued until after 120 days of filing the Complaint, the Court must dismiss the action, unless there is good cause, and there exists no good cause. According to Plaquemines Holdings, the litigious redemption issue in this case is also at issue in the cases pending before the Bankruptcy Court, and CHS appears to have waited to issue summons until a ruling was made in these cases on the litigious redemption issue. This, argues Plaquemines Holdings, does not constitute good cause for delay.

### B. CHS's Response

CHS filed a Response in opposition to Plaquemines' Motion. (R. Doc. 8). CHS alleges that the Court has the discretion under Rule 4(m) to either dismiss the action without prejudice or direct that service be effected with a specific time period, asking the Court do the latter. Further, CHS alleges that its delay in serving Plaquemines with the summons was due to good cause, particularly that it was awaiting decisions from the Bankruptcy Court and the Eastern District on the proper jurisdiction for the related cases, and as soon as jurisdictional decisions were made, it served Plaquemines. Finally, CHS argues that because service has now been made, there is further reasons to deny the present Motion.

## III. LAW & ANALYSIS

Federal Rule of Civil Procedure 4(m) governs the time limit for service, providing, "[i]f a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against the defendant

or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period...." A district court thus is afforded discretion to enlarge the time for service even if there is no good cause shown. *See Henderson v. United States*, 517 U.S. 654, 662-63 (1996). Stated differently, if good cause is shown, a court *must* extend the time for service, but if good cause is not shown, a court *may*, in its discretion, extend the time for service. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996)(citing *Pretrucelli v. Bohringer & Ratzinger, GMBH*, 46 F.3d 1298, 1305-06 (3d Cir. 1995)). "Good cause" for purposes of Rule 4(m) requires "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Lambert v. United States*, 44 F.3d 296, 299 (5th Cir. 1995). In addition, courts generally require "some showing of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified...." *Id*.

It is undisputed that CHS failed to serve Plaquemines Holdings within the 120 day time limit proscribed by Rule 4(m). *See* (R. Docs. 1, 5). Thus, the Court must determine whether to dismiss the action without prejudice, order that service be made within a specified time, or if there is good cause for the delay, extend the time for service. Service has since been made on Plaquemines Holdings, rendering unnecessary an order directing that service be made or the time for service extended. In considering whether to dismiss or retain the action, the Court notes that CHS served the complaint only a few weeks past the 120 day deadline and its delay was not done in bad faith, but rather in order to obtain relevant rulings in related litigation. These facts demonstrate, at the most, good cause and, at the least, a reasonable basis for the Court to exercise

its discretion to deny the present Motion. Accordingly, the Court retains the case for further proceedings.

**IV.	CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Plaquemines Holdings' Motion to Dismiss Pursuant to Rule 4(m)(R. Doc. 6) is DENIED.

New Orleans, Louisiana this 27th day of June, 2012.

_____
UNITED STATES DISTRICT JUDGE