UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHS, INC. | * | CIVIL ACTION |
| | * | |
| | * | NO. 11-2391 |
| | * | |
| PLAQUEMINES HOLDINGS, LLC | * | SECTION "L"(2) |

## ORDER AND REASONS

Before the Court is Defendant Plaquemines Holdings, LLC's ("Plaquemines Holdings" or "Plaquemines") Motion to Dismiss for Failure to State a Claim. (R. Doc. 15). The Court, after hearing oral arguments by counsel and after reviewing the submitted memoranda and applicable law, now issues this Order and Reasons.

## I. BACKGROUND

The present matter arises out of the alleged sale of a litigious right and represents an attempt to redeem this right. Plaintiff CHS, Inc. ("CHS") is a corporation organized and existing under the laws of the state of Minnesota with its principal place of business in Minnesota. CHS has filed with the Louisiana Secretary of State to do business in Louisiana as "CHS Inc. of Minnesota." Non-party CHS-SLE Land, LLC (the "Land LLC") is a Louisiana limited liability company, whose two members are CHS and non-party South Louisiana Ethanol, LLC ("SLE").

Defendant Plaquemines Holdings, LLC is a limited liability company organized and existing under the laws of the state of Louisiana. The sole member of Plaquemines is J.A.H. Enterprises, Inc., a corporation organized and existing under the laws of the state of Louisiana and with its principal place of business in Louisiana.

-1-

On August 29, 2009, SLE filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in a proceeding captioned *In re South Louisiana Ethanol*, Case No. 09-12676, pending in the United States Bankruptcy Court for the Eastern District of Louisiana. On April 19, 2011, the Bankruptcy Court confirmed SLE's Amended Plan of Reorganization by Liquidation Including Immaterial Modifications Under Chapter 11 of the Bankruptcy Code of South Louisiana Ethanol, LLC (the "Plan"). As of April 20, 2011, SLE was operating as a reorganized donor. Pursuant to the terms of the Plan:

> All of the assets of the Debtor, less and except its fifty (50%) percent interest in CHS-SLE Land, LLC shall be sold. . . . With regard to the Debtor's fifty (50%) percent membership interest of 4.5 acres (batture land), if no consensual agreement can be confected with CHS, Inc., relative to the transfer of Debtor's membership interest, Debtor shall institute legal proceedings to dissolve the limited liability company and partition the real property asset of CHS-SLE Land, LLC to be divided in kind. This litigation may or may not be successful. If successful, the rights, interest, and entitlements awarded to the Debtor will be transferred to the Purchaser of the Property and option, upon the timely exercise of the option. If the litigation is not successful, it is Debtor's intention to either assign its economic attributes and retain its membership in CHS-SLE Land, LLC or SLE will remain in existence until it is able to liquidate this asset, subject to the consent and approval of security interest holder, Whitney National Bank.

On May 31, 2011, pursuant to the terms of the Plan, SLE filed a lawsuit in the 25th Judicial District Court for the Parish of Plaquemines.[1] In this litigation, SLE sued to dissolve the Land LLC and to distribute all of its property to its members, CHS and SLE, on the grounds that the business purpose of the Land LLC has been frustrated and that there is a deadlock between the members.

Meanwhile, on June 7, 2011, the Bankruptcy Court issued an order authorizing SLE

---

[1] *South Louisiana Ethanol, L.L.C. v. CHS-SLE Land, L.L.C. and CHS, Inc.*, No. 58-782, 25th Judicial District Court for the Parish of Plaquemines.

to sell, by public auction, certain assets (the "Sale Order"). Pursuant to the terms of the Sale Order, the Bankruptcy Court authorized SLE to sell, by public auction, the following: (1) immovable property located in Plaquemines Parish and commonly known as Tract A-1C1; (2) all movable property located on Tract A-1C1; and (3) "an option to purchase all rights, title and interest distributed to Seller, SLE, resulting from the dissolution of limited liability company [CHS-SLE Land, LLC] (collectively "Sale Items"). On or about June 9, 2011, J.A.H. submitted a bid of $6,802,000 for the Sale Items, which SLE accepted. On July 31, 2011, pursuant to the terms of the Sale Order, the Bankruptcy Court issued an order approving the sale (the "Approval Order") of all of the Sale Items to J.A.H. in the amount of $6,802,000. Pursuant to the terms of the Approval Order, J.A.H. agreed to pay $202,000.00 for the "option to purchase all rights, title and interest distributed to Seller, SLE, resulting from a dissolution of [the Land LLC]." The Approval Order provided that J.A.H. and SLE would close on the sale of the Sale Items at a later date. J.A.H. eventually assigned its rights under the Sale Order and the Approval Order to Plaquemines Holdings. The sole member of Plaquemines Holdings is J.A.H. On or about August 23, 2011, Plaquemines Holdings and SLE closed on the sale (the "Sale"), and Plaquemines Holdings became the owner of the Sale Items.

On the date of the Sale, and as part of the transactions contemplated by the Sale Order and Approval Order, SLE and Plaquemines Holdings also executed an Option Agreement (the "Option Agreement"). The Option Agreement provides, in Paragraph 1(a), that in consideration of $202,000, SLE grants to Plaquemines Holdings an exclusive option to acquire from SLE all of its "right, title and interest in and to all distributions (the 'Property') made to [SLE] in the liquidation of [the Land LLC] resulting from the Judgment." The Option

Agreement further provides that "the acquisition price for the Property shall be One Dollar cash, plus the option price paid to [SLE] pursuant to the terms of Paragraph 1(a)."

On September 9, 2011, Whitney National Bank filed a motion in the Bankruptcy Court seeking an order to distribute certain proceeds of the Sale. CHS learned that the Sale had closed when it received Whitney's Motion. CHS also learned from the Motion that Plaquemines Holdings was the entity that purchased the Sale Items.

On September 22, 2011, CHS filed a Complaint for Redemption in this Court against Plaquemines Holdings. (R. Doc. 1). CHS cites, as a basis for the litigation, Article 2652 of the Louisiana Civil Code, Sale of a Litigation Right, which provides that "[w]hen a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of the assignment." Article 2652 further provides that a "right is litigious, for that purpose, when it is contested in a suit already filed." CHS alleges that the litigation commenced on May 31, 2011, and CHS answered, denying the allegations in the litigation, on June 21, 2011, and Plaquemines Holdings, in effect, purchased the claims that are the subject of the litigation on August 23, 2011. Although the Bankruptcy Court's Approval Order specifically stated that the Sale was not the sale of a litigious right pursuant to Article 2652, according to CHS, this transaction constituted the purchase of a litigious right by Plaquemines Holdings from SLE. CHS, thus, made a redemption demand on Plaquemines Holdings for $202,000, together with interest at the judicial rate, commencing on the date of the Sale. CHS prays that this Court: (1) declare that Plaquemines Holdings purchased the claims that are the subject of the litigation pursuant to Louisiana Civil Code Article 2652 when it entered into the Option Agreement; (2) declare that CHS is entitled to

redeem the property purchased by Plaquemines Holdings in the Option Agreement; (3) order that Plaquemines Holdings sell the property it purchased in the Option Agreement to CHS for $202,000; and (4) grant CHS further relief as the Court deems just, proper and equitable. On June 27, 2012, the Court denied Defendant Plaquemines Holdings' Motion to Dismiss for lack of timely service.

## II. PENDING MOTION

### A. Plaquemines Holdings' Motion

On September 17, 2012, Defendant Plaquemines Holdings filed the instant Motion to Dismiss for Failure to State a Claim. (Rec. Doc. No. 15). Plaquemines Holdings makes three arguments in support of its Motion. First, Plaquemines Holdings argues that the option it purchased is not equivalent to a litigious right because the rights at issue in SLE's lawsuit seeking to wind up the affairs of the Land LLC are distinct from the rights Plaquemines Holdings purchased in the Option Agreement. Plaquemines Holdings emphasizes that it owns the option to purchase whatever interests in immovable property SLE ultimately owns upon the dissolution of the Land LLC, but does not own an interest in the Land LLC—in fact, Plaquemines Holdings asserts that it does not "have any interest in the winding up of [the Land LLC]." (Rec. Doc. No. 15-1, at 9).

Plaquemines Holdings' second argument is that the Bankruptcy Court's orders approving the sale procedure and the option agreement have preclusive effect and bar CHS's claim in this Court. Plaquemines Holdings emphasizes that CHS participated in the Bankruptcy Court's proceedings, including objecting to the sale procedure as initially proposed and then bidding in the auction. Plaquemines Holdings thus characterizes CHS's claim for redemption as

a collateral attack on the procedures approved by the Bankruptcy Court.

Finally, Plaquemines Holdings argues that Article 2652 of the Louisiana Civil Code does not apply to a judicial sale, meaning either a judicially ordered or a judicially approved sale, of a litigious right. Because the option in this case was sold pursuant to the Bankruptcy Court's orders and with its approval, Plaquemines Holdings argues that the sale was a judicially approved sale and that the right to redemption does not apply.

**B. CHS's Opposition**

CHS has filed a Memorandum in Opposition to Plaquemines Holding's Motion. (Rec. Doc. No. 18). CHS first asserts that its requested relief, if granted, will not affect the outcome of the bankruptcy proceedings. CHS argues that, should this Court order that Plaquemines Holdings sell the property it purchased in the Option Agreement to CHS for $202,000, SLE and its creditors will still receive the proceeds of the auction of SLE's assets. In other words, CHS argues that it seeks to substitute itself as winner of the auction, but does not otherwise seek to upset the auction's results or to change the value received by the bankruptcy estate.

CHS responds to Plaquemines Holdings' argument for the preclusive effect of the Bankruptcy Court's orders by arguing that a bankruptcy plan's preclusive effect extends to the debtor and to creditors, but that CHS is a third party to the bankruptcy proceeding.

Finally, in response to Plaquemines Holdings' argument for the inapplicability of Article 2652 to judicial sales, CHS argues that the rule cited by Plaquemines Holdings comes from a 1913 case (and another, even older case) which cannot constitute jurisprudence constante and therefore should not be assigned controlling weight. CHS also attempts to distinguish both

cases based on their facts, arguing that the present case involves a judicially approved sale, whereas the two older cases dealt with judicially ordered sales.

**C. Plaquemines Holdings' Reply**

Plaquemines Holdings has filed a Memorandum in Reply to CHS's opposition. (Rec. Doc. No. 25). Plaquemines Holdings emphasizes that Article 2652 empowers a "debtor" with the ability to redeem a litigious right, but that the circumstances of this case do not make clear that CHS is, in fact, a "debtor," or the appropriate debtor to which the Article should apply. More specifically, Plaquemines Holdings asserts that CHS should not be empowered as a debtor with the right to redemption when CHS, although technically a defendant in the underlying litigation, is not actually subject to any debt or liability, but rather is named as a defendant (along with the Land LLC) because of its membership interest in the Land LLC and for the purposes of the wind-up of the Land LLC's affairs. In that sense, Plaquemines Holdings argues, SLE is as much a "debtor" as CHS is, notwithstanding its nominal status as plaintiff in the underlying proceeding, because both entities have the same one-half interest in the Land LLC. Yet, in order for CHS's argument for the applicability of Article 2652 to succeed, CHS must be construed as a "debtor" and SLE as a transferor of a litigious right despite their equivalent positions vis-a-vis the Land LLC. Plaquemines Holdings argues that the Land LLC is the true debtor in these circumstances, whereas SLE and CHS are both properly considered co-owners and/or creditors.

Plaquemines Holdings further argues that allowing the application of the litigious redemption doctrine to bankruptcy auctions would have a profound chilling effect and thereby frustrate the purposes of the bankruptcy process. Plaquemines Holdings argues that, should entities like CHS be allowed to substitute themselves for the winning bidder, otherwise

interested parties will have a reduced incentive to bid, thus depressing the value that can be realized from auction of a bankrupt's assets. Meanwhile, entities like CHS will have no incentive to bid at all if they can instead wait until the auction is closed and then take the place of the winner.

### III. LAW AND ANALYSIS

The Federal Rules of Civil Procedure permit a defendant to seek dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court must construe facts in the light most favorable to the nonmoving party, as a motion to dismiss under 12(b)(6) "is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), as revised (Dec. 16, 2011) (quotation marks and citation omitted). Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To satisfy this standard, the complaint must provide more than conclusions, but it "need not contain detailed factual allegations." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). Yet, it must allege enough facts to move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Determining whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

Whether CHS's complaint states a plausible claim so as to satisfy the 12(b)(6) standard depends on the resolution of at least one of the following four issues, any of which could be dispositive of CHS's claim: first, whether Article 2562 applies to a judicially approved

sale of rights in a partition proceeding; second, whether CHS is a "debtor" under Article 2562; third, whether the Bankruptcy Court's orders have preclusive effect on the issues CHS raises here; and, fourth, whether applying Article 2652 in this case would frustrate the Bankruptcy Court's exercise of its statutory authority.

### A. Applicability of Louisiana Civil Code Article 2652 to Judicially Approved Sales of Rights in Partition Proceedings

Chapter 15 of the Louisiana Civil Code governs the assignment of rights, and is a part of Title VII, governing sales. Louisiana Civil Code Article 2642 provides that "all rights may be assigned, with the exception of those pertaining to obligations that are strictly personal." Article 2652 governs the sale of litigious rights as a specific category of assignments subject to Chapter 15. Article 2652 provides, in relevant part: "When a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of the assignment. A right is litigious, for that purpose, when it is contested in a suit already filed." LA. CIV. CODE ANN. art. 2652.

Thus, although Louisiana does not prohibit the assignment of litigious rights, Article 2652 reflects the Legislature's suspicion of such assignments by removing the financial incentive from the assignment of litigious rights. *See U.S. v. 12,918.28 Acres of Land in Webster Parish, La.*, 50 F. Supp. 712, 721-23 (W.D. La. 1943) (tracing the "severe condemnation of the sale of a litigious right" under Roman and French law and its codification in the Louisiana Civil Code). The Louisiana Supreme Court has stated that the purpose of Article 2652's remedy is to "prevent the purchasing of claims from avarice or to injure the debtor." *Smith v. Cook*, 189 La. 632, 643-44; 180 So. 469, 472-73 (1938) (internal quotation marks omitted). The *Smith* Court explained

that "the lawmakers have deemed it advisable from a standpoint of equity and public policy, in the sale of a matter in litigation, to favor the party against whom the matter in litigation is transferred over one who speculates in law suits." *Id.* at 644; *see also 12,918.28 Acres of Land in Webster Parish, La.*, 50 F. Supp. at 723. Other courts have explained that Article 2652 is intended to "dissuade trafficking in lawsuits." *Peoples Homestead Federal Bank & Trust v. Laing*, 94-25784 (La. App. 2 Cir. 5/4/94); 637 So. 2d 604, 606. According to one reviewing court, the "common thread that runs throughout these policy declarations is a concern over unregulated assignments of litigious rights and the potential for abuse created by such assignments." *In re East Cameron Partners, L.P.*, 2011 WL 4625368 at *7 (Bankr. W.D. La. Sept. 30, 2011). Louisiana courts have recognized examples of assignments of litigious rights that fall outside of the scope of Article 2652 because of either the nature or the context of the assignment. Specifically, when the circumstances of the assignment do not involve a potential marketplace for litigation—such as in highly regulated assignments under judicial supervision—and thus do not implicate the policy concerns at the heart of Article 2652, or when the underlying litigation does not involve a disputed debt as in a typical civil suit, Louisiana courts have held that Article 2652 does not apply. *Bluefields S.S. Co. v. Lala Ferreras Cangelosi S.S. Co.*, 133 La. 424, 426-29, 63 So. 96 (1913); *Peoples Homestead Federal Bank and Trust v. Laing,* 94-25784 (La. App. 2 Cir. 5/4/94); 637 So. 2d 604, 605-06; *see also Crain v. Waldron*, 210 La. 561, 27 So. 2d 333 (1946).

For example, the Louisiana Supreme Court's latest pronouncement on the issue of the applicability of the litigious redemption doctrine to judicially ordered sales came in 1913. *Bluefields S.S. Co. v. Lala Ferreras Cangelosi S.S. Co.*, 133 La. 424, 426-29, 63 So. 96 (1913).

There, the Court held that "article 2652 of the Civil Code has no application to a judicial sale of a litigious right." *Id.* at 428. The plaintiff in *Bluefields* went into receivership after filing the petition, and the defendants moved to dismiss based on the plaintiff's interest in the case having been sold and adjudicated in the receivership proceeding. *Id.* at 426-47. After denial of their motion to dismiss, the defendants moved to remand the case based on the litigious redemption doctrine, arguing that the substituted plaintiff, who had purchased the litigious rights from the original plaintiff's receiver, was subject to Article 2652, and that remand was necessary to determine the purchase price of those litigious rights. *Id.* After reviewing the text of the Article and two earlier cases holding the Article inapplicable to sheriff's sales, the Court held that the sale by the receiver to the substituted plaintiff was a judicial sale, and that the Article did not apply. *Id.* at 428 ("The sale in this case was a judicial sale, made by the receiver appointed by a competent court for the express purpose of executing its orders in the receivership proceedings of the plaintiff company, and the sale made by him was made under an order of that court.") The Court further noted that the fact that the original plaintiff was ordered by the judge to intervene in the act of sale did not convert the sale from a judicial sale to a conventional sale. *Id.* at 429.

Similarly, in *Crain v. Waldron*, the Louisiana Supreme Court described as a "correct principle of law" the contention that "the sale of property involved in a partition suit is not a transfer of a litigious right under the codal article, since all the parties admitted the others' rights to a partition." 210 La. 561, 565, 27 So. 2d 333, 334 (1946). However, the sale at issue in *Crain* involved rights in a partition proceeding wherein one co-owner sought recognition of an increased share of the subject property. Accordingly, the *Crain* court defined an exception to the above-stated principle and held that Article 2652 should apply to a partition proceeding when the

parties dispute each other's interest in the property.

Applying the above precedents, in *Peoples Homestead Federal Bank and Trust v. Laing*, the Louisiana Second Circuit Court of Appeal affirmed the trial court's refusal to apply the litigious redemption doctrine; the Court of Appeal held that Article 2652 should not apply to a litigious right transferred first to a receiver—a government agency—and then to an individual. 94-25784 (La. App. 2 Cir. 5/4/94); 637 So. 2d 604, 605-06. The plaintiff bank filed suit to recover from Laing under a past-due promissory note. *Id.* at 605. When the bank became insolvent during the pendency of the debtor's appeal, the Resolution Trust Corporation ("RTC"), a government agency, was appointed receiver and substituted itself as plaintiff. *Id.* Finally, an individual who had purchased the note from the RTC substituted himself as plaintiff. *Id.* The Court of Appeal reasoned that, although Article 2652 is aimed at removing the profit motive from the litigation marketplace, "profit did not motivate the RTC's acquisition" of the right to collect on the promissory note. *Id.* at 606. Therefore, the court reasoned, application of the litigious redemption rule would "thwart the useful and expeditious method by which thrift regulators intervene in failing institutions," which method involved estimating a thrift's assets based on the thrift's records and then executing bulk transfers of those assets. *Id.* Application of Article 2652 would have required the agency to "assign[] a value to each and every pending suit on a note . . . produc[ing] an unjustified windfall to the defaulting borrowers and a consequential loss to either the thrift's depositors, other creditors, or the taxpayers." *Id.* The court concluded its analysis by holding that the agency had assigned its rights to be free from litigious redemption to the ultimate individual plaintiff, the note's transferee. *Id.* The court noted that a contrary holding would restrict the market for such assets and hamper the RTC's ability to carry out its

work. *Id.*

By contrast, the Louisiana Third Circuit Court of Appeal has held that a bankrupt who reacquires his own litigious right from his trustee is subject to the right of redemption under Article 2652. *Calderera v. O'Carroll*, 88-246 (La. App. 3 Cir. 11/8/89) 551 So. 2d 824, 828, *writ denied sub nom. Caldarera v. O'Carroll*, 556 So. 2d 60 (La. 1990). The Court of Appeal rejected the bankrupt's argument that no meaningful "transfer" had occurred under the Civil Code because the initial transfer from the bankrupt to his trustee was involuntary. *Id.* at 827. The court stated that it was "aware of no statutory or jurisprudential authority which would mandate this court to characterize the assignment as anything but a transfer." *Id.* In applying Article 2652 to that transaction, the court did not cite *Bluefields* or *Crain*. *See id.*; *see also Swanzy v. Vac Marine, Inc.*, 2004-1006 (La. App. 1 Cir. 5/6/05), 915 So. 2d 904, 907, *writ denied, Swanzy v. VAC Marine, Inc.*, 2005-1500 La. 1/13/06, 920 So. 2d 237 (declining to follow *Calderera* and noting apparent inconsistencies between the *Calderera* ruling and other opinions by the Louisiana Third and Fourth Circuits).

Like in *Bluefields*, where the Louisiana Supreme Court refused to apply Article 2652 to a sale under court supervision, here the Bankruptcy Court's supervision of the auction and approval of the Sale serve as more than adequate safeguards of the policy interests enshrined in Article 2652. And, in accordance with the principle of law identified in *Crain*, but unlike the facts and circumstances of that case, where the Court applied Article 2652 to the sale of rights in a partition suit wherein one party sought an increased share of the property, here neither CHS nor SLE disputes the other's one-half share in the land or right to partition thereof.

Here, the claims assignment was not an unregulated, stand-alone assignment of

litigious rights, but was part of the sale of substantially all of SLE's assets within the framework of a bankruptcy case under Chapter 11 of the Bankruptcy Code. The parties could not have completed the transaction without judicial scrutiny and approval under 11 U.S.C. § 363. The litigants here agree that the Bankruptcy Court reviewed and approved both the auction procedure and the ultimate option sale. The Bankruptcy Court's role in reviewing and approving the Sale under section 363 and the fact that the assignment of claims was part of the sale of substantially all of SLE's assets within the framework of a Chapter 11 case are factors that protect against the abusive conduct that Article 2652 seeks to control.

Accordingly, the Court finds that Article 2652 does not apply to the Sale. As a result, CHS has failed to state a claim upon which relief can be granted.

### B. Remaining Issues

Because relevant Louisiana precedents indicate that Article 2652 does not apply to the Sale, the Court need not address the issues of CHS's status as a "debtor" under Article 2652 or the potential res judicata effect of the Bankruptcy Court's orders. However, the Court notes that, like in *Peoples Homestead*, where application of the litigious redemption doctrine would have interfered with thrift regulators' ability to carry out their functions effectively and efficiently, here the application of Article 2652 would substantially impair a Bankruptcy Court's ability to obtain maximum value for a debtor's assets by means of auctions. 94-25784 (La. App. 2 Cir. 5/4/94); 637 So. 2d 604, 06. If entities in CHS's position could rely on the applicability of Article 2652, they would have no incentive to participate in auctions like the one arranged by the Bankruptcy Court here; instead such entities would have every incentive to remain on the sidelines waiting to supplant the winner's bid. By the same token, the threat of such usurpation

would have a substantial chilling effect on other would-be bidders.

**IV.     CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Plaquemines Holdings' Motion to Dismiss for Failure to State a Claim, Record Document 15, be and is hereby **GRANTED**. **IT IS FURTHER ORDERED** that Plaintiff CHS, Inc.'s claims against Defendant Plaquemines Holdings, LLC be and are hereby **DISMISSED** with prejudice.

New Orleans, Louisiana this 5th day of December, 2012.

UNITED STATES DISTRICT JUDGE